ELBERT J. DECKER, Appellant, *v.* THE CITY OF NEW YORK and Another, Respondents, Impleaded with the TOWN OF HEMPSTEAD, Appellant.

Second Department, March 5, 1926.

Boundaries — boundary between city of New York and town of Hempstead — description of village of Far Rockaway by metes and bounds is controlled by description that land runs " along Jamaica Bay "— bay is boundary line of village — recent maps by city showing " city line " not binding on city — contention by city in proceedings before Land Board of State of New York not conclusive on city in this action.

In an action involving a dispute as to the boundary line between the city of New York and the town of Hempstead, inasmuch as the Greater New York charter (§ 1), at and near the *locus in quo*, fixes the boundary line between the city and the former village of Far Rockaway at the " bounds " of such village, a description of the boundary line of the village of Far Rockaway, which at the point in question is coincident with the boundary line of the town of Hempstead, given according to metes and bounds as required by the Village Law of 1870 (as amd.), in force when the village of Far Rockaway was incorporated, is controlled by a further description that the boundary line of the village is " along Jamaica Bay," for if it were otherwise, there would be a strip of ground between the boundary line, as given by metes and bounds, and Jamaica bay, which clearly was not the intention of the incorporators of the village.

Certain recent maps made by the city of New York on which the surveyor's line is indicated by the words " city line " do not constitute a conclusive declaration by the city that the line so indicated is a boundary line.

Furthermore, the fact that the city of New York urged in a proceeding before the Land Board of the State of New York that the boundary line conformed to the line described by metes and bounds in the description of the territory included in the village of Far Rockaway is not conclusive on the city.

APPEAL by the plaintiff, Elbert J. Decker, and by the defendant, the Town of Hempstead, from a judgment of the Supreme Court in favor of the defendants, the City of New York and another, entered in the office of the clerk of the county of Queens on the 28th day of July, 1924, upon the decision of the court rendered after a trial at the Queens Special Term.

*Charles S. Noyes* [*William J. Morris* with him on the brief], for the appellants.

*Charles Bradshaw* [*George P. Nicholson, Corporation Counsel,* with him on the brief], for the respondents.

LAZANSKY, J.   The action is really a boundary dispute between the city of New York and the town of Hempstead. According to the Greater New York Charter (Laws of 1901, chap. 466, § 1) the boundary line of the city, at and near the *locus in quo,* is the " east and north bounds of the former village of Far Rockaway." The village of Far Rockaway was incorporated in 1888 under the Village Law then in force (Laws of 1870, chap. 291). Under this law (Tit. 1, § 2) the incorporators were required to have made " an accurate survey and map and verbal description, by metes and bounds, of the territory intended to be embraced within such village * * * by a practical surveyor, *showing the quantity of land in such territory,* all to be verified by the affidavit of the surveyor thereon or annexed thereto." It was also required (Tit. 1, § 3) that an accurate census be taken of the resident population of said territory as it was on a day not more than twelve weeks prior to the time of the election to be had upon the question of incorporation. Then there were requirements (Tit. 1, §§ 4–7 *et seq.,* as amd. by Laws of 1871, chap. 688; Laws of 1878, chap. 59, and Laws of 1888, chap. 172) with reference to the notice of such election. These need not be considered here. Pursuant to this law, a map and a description were filed. It seems the originals were lost and secondary proof thereof was offered. To this the city objected. But as the plaintiff's claim is based upon it, it will be considered regardless of its admissibility. From the map and the description it will be observed that the surveyor outlined the territory by straight lines running from point to point. But it will be noticed that in approaching the ocean, which is a southerly boundary of the proposed village, the description recites: " across said inlet and outer beach to *near* high water mark on said beach; thence * * * 5,367.10/100 feet, along the shore of the ocean; thence * * * 2,428.50/100 feet, still along said ocean." Then, when the surveyor comes to land along the bay, at the end of the descriptions which include the property in question, are the words " along Jamaica Bay." The claim on the part of the plaintiff, a property owner within the disputed territory, and the town of Hempstead is that the straight lines, as shown on the map and as mentioned in the description, are controlling. The city of New York claims that the words " along Jamaica Bay " are controlling and that the boundary line of the village, where it touches the bay, is the bay.

The important consideration where there is conflict in the terms of a deed or similar instrument, or between terms and a map, is to ascertain the intention. Here, although the surveyor has given straight lines as the boundary marks of this village, it must be held, in light of the use of the words " along Jamaica Bay " in connection with those lines, that it was the intention of the incorporators that the bay should, at the places mentioned, be the boundary line. Common sense calls for this conclusion. The description which takes the village to the ocean says, " to near highwater mark on said beach." There are two lines along the beach. The ocean, of course, is the boundary of the town of Hempstead. Surely it was never intended to leave a strip between *near* high-water mark and high-water mark outside of the jurisdiction of the proposed village. And so it may be said of the land between the surveyor's line and the shore of the bay, which appellant asserts is no more than 200 feet in width at the locality in question and in other places is surely much less. It is nigh inconceivable that the people of the proposed village intended to omit this strip from the proposed village. The facilities it offered to them are repugnant to such an intention. It is not necessary to consider whether the village went to the high-water mark or the low-water mark. It went to Jamaica bay.

It is true that at different places, as pointed out by the appellants, the lines actually cross the bay or a cove or basin. It seems to me that this was done by the surveyor in his effort to make the lines as concise as possible and as close to the bay as possible. The purpose of these straight lines was undoubtedly to ascertain as nearly as possible the quantity of land in the proposed territory, as required by the act. No other method was practicable for the purposes of section 2 of title 1 of the Village Law of 1870.

There are several maps submitted by appellants, published by the city of New York through its board of estimate, which they claim are a practical acceptance by the city of the description urged by them. On these maps the surveyor's line is indicated by the words " city line." But it will be noted that streets and proposed streets are extended beyond that line. There is nothing in these maps which shows that the city intended the surveyor's line to mean the boundary line. True, the words " city line " will be found thereon; but that is not necessarily a declaration of the city's conclusion that it is the city line. Surely the city would not have extended the streets beyond this line if it was believed that that was the limit of the city's territory. However, I do not think that these maps, so recently made, one in 1912 and the other in 1916, would conclude the city.

It is also urged that in a proceeding before the Land Board of the State of New York the city took the position that the line of the city went to this straight line. That, of course, is not conclusive upon the city.

The judgment should be affirmed, with costs.

Present—KELLY, P. J., RICH, JAYCOX, KAPPER and LAZANSKY, JJ.

Judgment unanimously affirmed, with costs.